UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

TEXOMA WOODWORKS, LLC          §
                               §
v.                             §          CIVIL NO. 4:25-CV-460-SDJ
                               §
CARLOS DE JESUS, ET AL.        §

## MEMORANDUM ORDER AND OPINION

Before the Court is Plaintiff Texoma Woodworks, LLC's Amended Motion to Remand. (Dkt. #10). Having considered the motion, the parties' filings, and the applicable law, the Court determines that there is no basis for federal question jurisdiction; therefore, this case was improperly removed and will be remanded.

### I. BACKGROUND

Plaintiff Texoma Woodworks, LLC ("Woodworks") purchased a CNC panel beam saw through an online auction that, because of its size, needed to be decommissioned and transported in two separate trailers. (Dkt. #8 ¶¶ 10–13). Woodworks contracted with Defendant ATS Logistics Services, Inc. ("ATS") to deliver the beam saw in two different loads after being advised that ATS had carriers for the shipment. (Dkt. #8 ¶¶ 12–13). The first shipment was driven by Defendant Carlos De Jesus, a driver employed by Defendant Leo's Trucking TX, LLC ("Leo's Trucking"). (Dkt. #8 ¶¶ 14, 16).

While driving Woodworks's shipment, De Jesus was involved in a car accident that destroyed Woodworks's beam saw. (Dkt. #8 ¶ 16). Woodworks filed this action in state court, asserting state-law claims of negligence against De Jesus, vicarious

liability against ATS and Leo's Trucking, and breach of contract against ATS. (Dkt. #8 ¶¶ 18–26).

ATS timely filed a Notice of Removal, invoking federal question jurisdiction under 28 U.S.C. § 1331.[1] (Dkt. #1). Woodworks challenges the propriety of removal and seeks remand, contending that federal question jurisdiction is absent because there is no federal claim raised in its complaint and no other legitimate ground asserted for jurisdiction under 28 U.S.C. § 1331. (Dkt. #10).

## II. Legal Standard

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)) (cleaned up). Thus, when a plaintiff sues in state court, a defendant can remove the suit to federal court under 28 U.S.C. § 1441(a) only if the plaintiff could have filed the suit in federal court under a jurisdiction-granting statute. *See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citing 28 U.S.C. § 1441(a)). However, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (collecting cases).

---

[1] ATS originally removed the case to the United States District Court for the Northern District of Texas, Dallas Division. (Dkt. #1). However, the court *sua sponte* transferred the case to the Eastern District of Texas.

One such jurisdiction-granting statute is 28 U.S.C. § 1331, which gives federal courts subject-matter jurisdiction over all claims "arising under" federal law. Courts apply the well-pleaded complaint rule to determine whether a claim arises under federal law. Under that rule, federal question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). For cases removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction," then the federal court must remand the case to state court. 28 U.S.C. § 1447(c).

Generally, under the well-pleaded complaint rule, a case does not arise under federal law, and thus is not removable, if the complaint does not affirmatively allege a federal claim and instead asserts only state-law causes of action. *See Kramer v. Smith Barney*, 80 F.3d 1080, 1082 (5th Cir. 1996) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). As the Fifth Circuit has explained, "[t]he well-pleaded complaint rule precludes a plaintiff from predicating federal jurisdiction on an anticipated federal defense to his claim." *La. Indep. Pharm. Ass'n v. Express Scripts, Inc.*, 41 F.4th 473, 478 (5th Cir. 2022). Even when a plaintiff brings state-law claims that implicate federal law, "those claims cannot alone sustain federal jurisdiction." *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 242 (5th Cir. 2022). Likewise, "[a] defendant cannot remove an action to federal court unless the plaintiff pleaded a federal question on the face of

3

his complaint." *Id.*; *see also Stump v. Potts*, 322 F.App'x 379, 380 (5th Cir. 2009) (per curiam) ("It is not sufficient for the federal question to be raised in the answer or in the petition for removal."). After all, the plaintiff "is master of his complaint and may generally allege only a state law cause of action even where a federal remedy is also available." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008).

### III. DISCUSSION

Woodworks argues that, because its well-pleaded complaint alleges only state-law claims that do not raise a federal-law question, this case must be remanded. ATS resists remand, maintaining that the Court has federal question jurisdiction because Woodworks's state-law claims are completely preempted by the Federal Aviation Administration Authorization Act ("FAAAA"). Alternatively, ATS suggests that Woodworks's state-law claims raise a significant federal issue that creates federal jurisdiction under the *Grable* doctrine. In *Grable*, the Supreme Court recognized that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).

Neither of ATS's arguments survives scrutiny. ATS's complete preemption argument fails because, although the FAAAA may afford ATS a preemption defense, it does not meet the prerequisites for complete preemption and therefore cannot create federal question jurisdiction. ATS's *Grable* argument is equally unavailing. The doctrine applies only to a "special and small" category of cases, "typically a state-law claim premised on some component of federal law." *Mitchell v. Advanced HCS,*

4

*L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022) (internal quotation marks and citation omitted). When, as here, the alleged "federal issue" is raised as a defense, it does not appear on the face of Plaintiff's complaint and *Grable* does not apply.

Because there is no basis for federal question jurisdiction, this case was improperly removed and will be remanded.

## A. Complete Preemption

### 1. ATS fails to address the prerequisites for complete preemption.

Federal preemption "is ordinarily a federal defense to the plaintiff's suit" and, as a result, does not support federal question jurisdiction. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *see also Caterpillar*, 482 U.S. at 393 (explaining that it is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption"). Complete preemption is an exception to the well-pleaded complaint rule. It creates federal jurisdiction if Congress, by statute, "completely pre-empt[s] a particular area [such] that any civil complaint raising [the] select group of claims is necessarily federal in character." *Metro. Life Ins.*, 481 U.S. at 63–64. That happens when a federal law creates an "exclusive cause of action" and "set[s] forth procedures and remedies governing that cause of action," such that it "wholly displaces the state-law cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

The scope of complete preemption is "narrow." *Manyweather*, 40 F.4th at 243. It applies only when three conditions are met. First, federal law "creates a cause of

action that both replaces and protects the analogous area of state law." *Mitchell*, 28 F.4th at 585 (citation omitted). Second, Congress has empowered federal courts to hear that cause of action. *Id.* And third, Congress clearly intended that grant of jurisdiction to be exclusive. *Id.* Once those conditions are met, the party invoking federal jurisdiction must show that the plaintiff "could have brought his state-law claims under th[at] federal cause of action." *Id.* (citation omitted); *see also Manyweather*, 40 F.4th at 243 (same).

Here, ATS has invoked federal question jurisdiction based, in part, on its contention that the FAAAA completely preempts Woodwork's state-law claims. But in its remand briefing, ATS fails to even reference the three, above-described conditions that must be met, under controlling Fifth Circuit precedent, in order to apply the complete preemption doctrine. *See, e.g.*, *Mitchell*, 28 F.4th at 585; *Manyweather*, 40 F.4th at 243. ATS's failure to acknowledge the conditions for application of complete preemption, much less demonstrate how the FAAAA meets those conditions as to the state-law claims in this case, dooms this removal argument at the outset. "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno*, 276 F.3d at 723 (collecting cases).

## 2. The text of the FAAAA does not support ATS's argument.

Even if it had attempted to do so, ATS could not have demonstrated that the complete preemption doctrine applies in this case. Both the text of the FAAAA and its history confirm that the Act does not create any cause of action whatsoever, much

less a civil enforcement remedy that replaces the Texas common law of negligence and breach of contract applicable here.

The Court's textual analysis of the FAAAA is informed by Supreme Court precedent on complete preemption. To begin, complete preemption is vanishingly rare. The Supreme Court has applied the doctrine to confer jurisdiction in only three instances. First, in *Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the Court held that Section 301 of the Labor Management Relations Act ("LMRA") not only preempted state law but also authorized removal of actions that sought relief under state law. 390 U.S. at 559–62. Section 301 of the LMRA, codified at 29 U.S.C. § 185, provides federal courts with jurisdiction to adjudicate certain "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." As described by the Supreme Court, "[t]he necessary ground of decision [in *Avco*] was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd.*, 463 U.S. at 23 (internal quotation marks omitted). The Court went on to explain that "*Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Id.* at 23–24.

Second, in *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Court determined that the complete preemption doctrine applied to state common-law causes of action asserting improper processing of benefit

7

claims under a plan regulated by the Employment Retirement Income Security Act of 1974 ("ERISA"). 481 U.S. at 67. The Court focused on Section 502(a)(1)(B) of ERISA, which provides that a civil action may be brought by an ERISA plan participant or beneficiary "to recover benefits due" under the terms of the plan, to enforce rights under the terms of the plan, or to clarify rights and future benefits under the plan. *See id.* at 64–66; *see also* 29 U.S.C. § 1132(a)(1)(B). As explained by the Court in *Beneficial*, there were two reasons for its decision in *Metropolitan Life* that complete preemption applied: (1) ERISA's statutory text not only provided an express federal remedy for the plaintiffs' claims, but also used jurisdictional language similar to the LMRA's statutory language at issue in *Avco*, "thereby indicating that the two statutes should be construed in the same way"; and (2) ERISA's legislative history "unambiguously" revealed an intent to treat claim processing actions subject to ERISA "as arising under the laws of the United States in similar fashion to those brought under section 301 of the [LMRA]." *Beneficial*, 539 U.S. at 7–8 (quoting *Metro. Life Ins.*, 481 U.S. at 65–66).

Finally, in *Beneficial*, the Court considered whether the National Bank Act completely preempted claims asserted in state court against a national bank for allegedly charging excessive interest in violation of "the common law usury doctrine" and an Alabama statute. 539 U.S. at 3–4. The Court noted that Section 85 of the National Bank Act provides "substantive limits on the rates of interest that national banks may charge," and Section 86 of the Act "sets forth the elements of a usury claim against a national bank, provides for a 2-year statute of limitations for such a claim,

and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim." *Id.* at 9. The Court went on to conclude that, "[i]n actions against national banks for usury," Sections 85 and 86 of the Act "supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive," even when a plaintiff relies entirely on state law. *Id.* at 11.

In sum, every time the Supreme Court has applied the complete preemption doctrine, it has pointed to the text of a federal statute that (1) creates a cause of action that supersedes analogous state law, (2) authorizes federal courts to hear that cause of action, and (3) exhibits a clear congressional intent that the federal cause of action be exclusive. As the Fifth Circuit has recognized, these are the prerequisites for application of the complete preemption doctrine under controlling Supreme Court precedent. *See, e.g.*, *Mitchell*, 28 F.4th at 585; *Manyweather*, 40 F.4th at 243.

Contrary to ATS's contention, on its face the FAAAA fails to meet the prerequisites for complete preemption. ATS's removal of this case is premised on two preemption provisions found in the FAAAA. Specifically, ATS has invoked 49 U.S.C. § 14501(c)(1), which provides that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). ATS also has invoked 49 U.S.C. § 14501(b)(1), which provides that no state may "enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of

law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker." 49 U.S.C. § 14501(b)(1). Taken together, these FAAAA preemption provisions limit state authority to regulate prices, routes, and services of motor carriers, freight forwarders, and brokers.[2]

But state law claims that are merely subject to ordinary preemption are not recharacterized as claims arising under federal law. *See Rice v. Panchal*, 65 F.3d 637, 640 (7th Cir. 1995) (applying this principle in the context of conflict preemption). As the Fifth Circuit has explained, courts and litigants must avoid confusing complete preemption with ordinary or defensive preemption. "Complete preemption gives federal courts the power to adjudicate a case in the first place while defensive preemption is an affirmative defense that a defendant can invoke to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law." *Mitchell*, 28 F.4th at 585 n.2 (internal quotation marks and citations omitted).[3]

And neither Section 14501(c)(1) nor Section 14501(b)(1), or for that matter any other provision of the FAAAA, creates any cause of action or federal question jurisdiction. *See generally* 49 U.S.C. § 14501. Unlike the statutory provisions of LMRA, ERISA, and the National Bank Act considered by the Supreme Court in *Avco*,

---

[2] The FAAAA (Federal Aviation Administration Authorization Act of 1994, Pub. L. No. 103-305, 108 Stat. 1569), was amended by the ICCTA (Interstate Commerce Commission Termination Act of 1995, Pub. L. 104-88, 109 Stat. 803). Although Section 14501(c)(1) was enacted as part of the FAAAA and Section 14501(b)(1) as part of the ICCTA, the Court references the provisions collectively as contained in the FAAAA.

[3] The Court notes that ATS primarily relies on two cases in its briefing, both of which are inapposite because they address defensive preemption, not the complete preemption doctrine: *Ye v. GlobalTranz Enter., Inc.*, 74 F.4th 453 (7th Cir. 2023); and *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261 (11th Cir. 2023).

*Metropolitan Life*, and *Beneficial*, the FAAAA includes no federal remedy or civil enforcement scheme, much less a scheme authorizing a cause of action that may be heard by federal courts. Because the FAAAA, including the preemption provisions cited by ARL, contains "no detailed, comprehensive civil enforcement scheme providing exclusive federal remedies," *Raaf v. UPS Ground Freight, Inc.*, No. 6:18-CV-00976-MC, 2018 WL 4609935, at *3 (D. Or. Sept. 25, 2018) (internal quotation marks and citation omitted), the statute "does not evidence a Congressional intent to transfer jurisdiction over all preemption claims arising thereunder from state to federal courts," *City of Rockford v. Raymond*, No. 98 C 50353, 1999 WL 218549, at *2 (N.D. Ill. Apr. 14, 1999).

### 3. The history of the FAAAA also refutes ATS's argument.

As explained above, *see supra* Part III.A.2, the complete preemption doctrine is inapplicable here because the FAAAA's text does not create any cause of action that "both replaces and protects the analogous area of state law," *Mitchell*, 28 F.4th at 585, namely the negligence, vicarious liability, and breach-of-contract claims at issue here that involve property damage resulting from a motor vehicle accident. The history of the FAAAA confirms this result.

The FAAAA was enacted in 1994 as part of "a greater push to deregulate interstate transportation industries." *Ye*, 74 F.4th at 457. It was preceded by the Airline Deregulation Act of 1978 ("ADA"), Pub. L. No. 95-504, 92 Stat. 1705, which largely deregulated the domestic airline industry, and by the Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793, which extended deregulation to the trucking

industry. In the FAAAA, "Congress completed the deregulation . . . by expressly preempting state trucking regulation." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256, 133 S.Ct. 1769, 185 L.Ed.2d 909 (2013).

Given its history as a statute extending the ADA's and the Motor Carrier Act's deregulation of transportation industries, it is unsurprising that the FAAAA contains preemptive language nearly identical to that in the ADA: "a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1); *see id.* § 41713(b)(4)(A) (same with respect to "air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle"). Because FAAAA Section 14501(c)(1) tracks the ADA, courts analyze the two provisions similarly. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008).[4]

Although the Fifth Circuit has not yet addressed whether the FAAAA completely preempts state law, it has addressed and rejected this argument in regard to the ADA's preemption provision, which FAAAA Section 14501(c)(1) mirrors. Specifically, the Fifth Circuit has held that the ADA's preemption clause does not provide federal question jurisdiction under the complete preemption doctrine. *See Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 925–26 (5th Cir. 1997)

---

[4] FAAAA Section 14501(b)(1) also tracks the language of the ADA. Accordingly, there is no reason to treat it differently than Section 14501(c)(1) in this analysis.

(explaining that the ADA's text and legislative history show "no evidence that Congress intended the federal courts to have exclusive subject matter jurisdiction over the [ADA's] preemption defenses") (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1253 (6th Cir. 1996), *amended on denial of reh'g*, No. 95–5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998)); *see also Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (observing that, unlike ERISA, the ADA "contains no hint" that it is intended to channel civil actions into federal courts). For the same reason, the FAAAA, which uses the same language as the ADA, does not completely preempt state-law claims. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006) ("[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.") (cleaned up).

*    *    *    *

Complete preemption occurs only when a federal statute has "extraordinary preemptive power." *Griffioen v. Cedar Rapids and Iowa City Ry. Co.*, 785 F.3d 1182, 1189 (8th Cir. 2015) (citation omitted). "The ultimate touchstone guiding preemption analysis is congressional intent." *Id.* (internal quotation marks and citation omitted). The text and history of the FAAAA, as well as controlling Supreme Court and Fifth Circuit precedent, confirm that the Act does not support application of the complete preemption doctrine, particularly as to the state-law claims at issue in this lawsuit.[5]

---

[5] ATS urges the Court to follow the decisions of certain district courts that have addressed complete preemption under purportedly similar circumstances. But the opinions

## B. *Grable* Doctrine

### 1. The doctrine does not apply when a federal statute or regulation is invoked as a defense.

ATS has also argued in the alternative that this case raises a significant federal issue that creates federal jurisdiction under the *Grable* doctrine. This argument also fails.

*Grable* stands for the proposition that, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." 545 U.S. at 312. *Grable* applies if: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 529 (5th Cir. 2020) (internal quotation marks and citations omitted). As the Fifth Circuit has observed, "[t]hese conditions are difficult to meet." *Mitchell*, 28 F.4th at 588.

---

relied upon by ATS are unpersuasive. For example, ATS points to *Gillum v. High Standard, LLC*, No. SA-19-cv-1378-XR, 2020 WL 444371 (W.D. Tex. Jan. 27, 2020). However, as several courts have noted, "[i]n *Gillum*, the court 'did not undertake the Fifth Circuit's complete preemption analysis and instead appeared to evaluate ordinary preemption.'" *Ubaldo v. F&A Border Transp., LLC*, No. EP-24-CV-47-KC, 2024 WL 1904545, at *4 (W.D. Tex. May 1, 2024) (quoting *Malone v. Russell*, No. 3:23-cv-1, 2023 WL 3854265, at *3 (N.D. Tex. June 6, 2023) (citation omitted)); *accord Gregg v. Rodriguez*, No. 23-cv-1031, 2023 WL 4053590, at *4 (D. Kan. June 16, 2023) (observing that *Gillum* was "based on an ordinary preemption analysis and courts have declined to find the decision persuasive on that basis"); *Est. of Wray v. Kennedy Bros. Logistics, Inc.*, No. 5:22-cv-70, 2022 WL 16550315, at *4 (E.D.N.C. Oct. 31, 2022) ("*Gillum*'s analysis, however, fails to distinguish between complete preemption and ordinary preemption, and draws upon ordinary preemption principles in its complete preemption analysis."). ATS also cites *Zamorano v. Zyna LLC*, No. SA-20-cv-151-XR, 2020 WL 2316061 (W.D. Tex. May 11, 2020), but *Zamorano* adopted *Gillum*'s complete preemption analysis and thus suffers from the same flaw.

The Fifth Circuit has also explained that *Grable* is applied "in the shadow of the well-pleaded complaint rule." *Id.* (citation omitted). Accordingly, courts look to the face of a plaintiff's well-pleaded complaint to determine whether the issues it raises implicate *Grable*. *Id.* Only a "special and small" category of cases can satisfy these requirements. *Id.* (internal quotation marks and citations omitted). "The type of claim that creates a federal question under *Grable* is typically a state-law claim premised on some component of federal law." *Id.* Thus, for example, a state-law negligence claim creates a federal question when it is premised on the existence of a duty established by federal law. *Id.*

ATS's invocation of the FAAAA's preemption provisions fails to implicate *Grable* because the relevance of these provisions is purely defensive. When a federal issue is raised "[a]s a defense, it does not appear on the face of a well-pleaded complaint." *Metro. Life Ins.*, 481 U.S. at 63 (citation omitted). Here, ATS argues that Woodworks "seeks to superimpose state negligence principles" on licensed brokers, and points to 49 U.S.C. § 14501(c)(1) as a "disputed" federal issue in the case because the statute bars certain claims against freight brokers like ATS. (Dkt. #11 at 8–9). But unlike a paradigmatic *Grable* case in which a state-law claim is premised on federal law, *see Mitchell*, 28 F.4th at 588, Woodworks does not allege any cause of action premised on 49 U.S.C. § 14501(c)(1), or any other portion of the FAAAA. Instead, ATS alone invokes the FAAAA, and specifically 49 U.S.C. § 14501(c)(1), as a defensive bar to Woodworks's lawsuit.

15

Given that the federal issues asserted by ATS under the FAAAA are neither raised nor disputed on the face of Woodworks's claims for negligence, vicarious liability, or breach of contract, *Grable* does not apply.[6]

### 2. The doctrine does not apply simply because a federal statute or regulation may play a role in the case.

The last question is whether the fact that federal regulations and standards, such as 49 U.S.C. § 14501(c)(1), may play a role in this case means that *Grable* is satisfied and federal question jurisdiction is present. The answer is no. State-law claims that merely implicate federal laws or regulations do not establish federal question jurisdiction. *Ubaldo*, 2024 WL 1904545, at *5; *see also Longitude 150 LLC v. McGee*, No. 22-cv-2181, 2022 WL 16942239, at *4–5 (W.D. La. Oct. 27, 2022). As the Fifth Circuit has explained, "a claim does not arise under the law of the United States pursuant to either sections 1331 or 1337 if the relief sought is based entirely upon a state cause of action in which [federal laws or] regulations are used merely as further evidence of the right to recover under state law." *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 155 n.2 (5th Cir. Unit A 1980) (citations omitted); *see also Am. Airlines, Inc. v. Sabre, Inc.*, No. 11-cv-488, 2011 WL 3468418, at *6 (N.D. Tex. Aug. 4, 2011), *aff'd*, 694 F.3d 539 (5th Cir. 2012) (noting that the "fact that a federal standard is to be referenced by a state court in determining whether there has been a state-

---

[6] Defendant ATS contends that 28 U.S.C. § 1337, which gives federal courts original jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies," also supports removal. However, this argument fails for the same reasons *Grable* does not apply. *See Ubaldo*, 2024 WL 1904545, at *6 n.4.

law violation" does not "cause[ ] a state-law claim to 'necessarily raise a stated federal issue.'" (quoting *Grable*, 545 U.S. at 314)).

The Seventh Circuit's decision in *Bennett v. Sw. Airlines Co.*, 484 F.3d 907 (7th Cir. 2007) (Easterbrook, J.), is particularly instructive on the question of whether the involvement of federal regulatory standards in the resolution of state-law claims means that such claims arise under federal law. In *Bennett*, the court noted that the Supreme Court has made clear that the presence of a contested federal issue in a state lawsuit, "even an important one, usually is insufficient for § 1331 jurisdiction." *Id.* at 909. The court pointed to *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), as a good example. In that case, the plaintiff alleged that a drug approved for sale by the Food and Drug Administration was inadequately labeled as a matter of federal law, and that this shortcoming should lead to recovery in tort under state law. The drug's manufacturer argued that this claim arose under federal law because the adequacy of the label must be assessed under federal substantive standards. The Supreme Court granted the premise—that a court must apply federal law to determine whether the drug had been labeled properly—but denied the conclusion that this made the plaintiff's claim "arise under" federal law. Instead, the Supreme Court concluded that, "[w]hether poor labeling supports recovery, and if so what damages are appropriate, are matters of state law that belong in state court." *Bennett*, 484 F.3d at 909.

As then-Chief Judge Easterbrook explained in *Bennett*, the Supreme Court reached a different result in *Grable* because that case involved a state proceeding that "amounted to a collateral attack on a federal agency's action." *Id. Grable* concerned the IRS's seizure of a parcel of Grable's land, which it then sold and applied the proceeds to Grable's taxes. Years later, Grable filed a quiet-title action under state law, maintaining that it should be confirmed as the owner of the parcel of land because the IRS's notice did not meet federal requirements. Under the circumstances, the *Grable* court concluded that "such a claim arises under federal law because, apart from the procedural vehicle (a quiet-title action), there was *nothing* in it but federal law, with the potential to affect the national government's revenues." *Id.* at 910. In sum, because of *Grable*'s unusual procedural posture a federal forum was considered appropriate for litigation "arising from a federal agency's performance of duties under federal law, doubly so given the effect on the federal Treasury." *Id.*

The *Bennett* court went on to explain that any argument that *Grable* somehow brings within Section 1331 "all actions in which federal law may play an important role" was expressly rejected by the Supreme Court in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006). *Id.* at 910. In *Empire Healthchoice*, the administrator of a health insurance program for federal employees filed suit in federal court seeking to recover from an insured who had settled a tort claim and failed to turn over any of the proceeds as required by the policy's subrogation clause. The administrator asserted that, because the policy's terms, including the reimbursement requirement at issue, had been prescribed by

federal regulation, the claim for reimbursement itself arose under federal law. The Supreme Court disagreed, however, and held that the claim arose under the contract, and, as in *Merrell Dow*, "the influence of federal law on the outcome of a contract (or tort) suit is not enough to support [ ] arising-under jurisdiction." *Bennett*, 484 F.3d at 910.

Judge Easterbrook applied the lessons of *Merrell Dow* and *Empire Healthchoice* to the circumstances before the Seventh Circuit in *Bennett*. The case arose from an accident that occurred when a Southwest Airlines jet tried to land at Chicago's Midway airport during a snowstorm. The plane was unable to come to a stop on the runway and smashed through an airport barrier, coming to rest in a city street and causing a fatality and other injuries. Following the accident, a lawsuit was brought in state court asserting tort claims and was removed to federal court on the theory that the plaintiffs' claims arose under federal law. *Id.* at 908. The question before the court was "whether plaintiffs' claims arise under federal law" because federal aviation standards would play "a major role" in the state-law negligence claims made against the air carrier (Southwest), the manufacturer of the plane (Boeing), and the airport operator (Chicago). *Id.*

The *Bennett* court held that federal question jurisdiction was absent, noting that the similar circumstances of *Merrell Dow* and *Empire Healthchoice*, as distinguished from *Grable*'s unusual posture, governed its reasoning. As in *Merrell Dow* and *Empire Healthchoice*, *Bennett* presented "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the

meaning of a federal law." *Id.* at 910. The court noted that "[s]tate issues, such as the amount of damages, may well predominate," and that, unlike *Grable*, there was no challenge to the validity of any federal agency's or employee's action. *Id.* Notably, the *Bennett* court rejected the argument that the importance of federal aviation standards in the case created federal question jurisdiction. *Id.* at 912 ("That some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law.").

The same reasoning applies here and leads to the same conclusion. To begin with, Woodworks has not invoked the referenced provisions of the FAAAA in its complaint, ATS has done so as a defensive measure—invoking federal standards as part of its preemption argument. When a federal issue is raised "[a]s a defense, it does not appear on the face of a well-pleaded complaint." *Metro. Life Ins.*, 481 U.S. at 63 (citation omitted). Given that the federal issues asserted by ATS under the FAAAA are neither raised nor disputed on the face of Woodworks's complaint, *Grable* plainly does not apply. And even assuming *arguendo* that federal regulatory standards applicable to motor carriers and brokers will play an important role in this case, as ATS suggests, federal question jurisdiction remains absent. As in *Merrell Dow*, *Empire Healthchoice*, and *Bennett*, the resolution of Woodworks's claims in this case also will turn on the fact-specific application of state law.

## C. Costs and Expenses

When a case is remanded, the court may order the removing party to pay "just costs and any actual expenses, including attorney fees, incurred as a result of the

removal." 28 U.S.C. § 1447(c). The Supreme Court has clarified that, absent unusual circumstances, courts may award attorney's fees under Section 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). This inquiry should take into consideration "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

While unsuccessful, ATS had an objectively reasonable basis for seeking removal—that the FAAAA potentially preempts Woodworks's state-law claims. Therefore, the Court will not award costs or expenses to Plaintiff.

## IV. CONCLUSION

It is therefore **ORDERED** that Plaintiff's Amended Motion to Remand, (Dkt. #10), is **GRANTED**. This case is **REMANDED** to the 59th Judicial District Court in Grayson County, Texas.

**So ORDERED and SIGNED this 6th day of February, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE